UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

DELFINO GARCIA GONZALEZ,

                    Plaintiff,                 19-cv-2911 (JGK)

          - against -                          OPINION AND ORDER

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES et al.,

                    Defendants.
────────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiff, Delfino Garcia Gonzalez, brought this action

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

seeking documents from various component agencies of the

Department of Homeland Security ("DHS"). The plaintiff requested

documents related to the plaintiff's past interactions with one

component of DHS, Immigration and Customs Enforcement ("ICE"),

and particularly to the plaintiff's interactions with a

component of ICE, Homeland Security Investigations ("HSI"). The

parties have cross-moved for summary judgment. The plaintiff

also moves to strike, or in the alternative for partial

disclosure of, _ex parte_ and _in camera_ submissions submitted by

the Government in support of the Government's motion for summary

judgment. For the reasons that follow, The plaintiff's motion to

strike the Government's _ex parte_ and _in camera_ submissions and

the plaintiff's motion for summary judgment are **denied**. The Government's motion for summary judgment is **granted**.[1]

## I.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might

---

[1] Concurrent with this memorandum opinion and order, the Court also issues an opinion ex parte and under seal that discusses further bases for the Court's order in the public opinion.

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998).Where there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law. See Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of Am., 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012).

"[T]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment." Ferguson v. Fed. Bureau of Investigation, No. 89-cv-

5071, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995) (citing

Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir.

1994)), aff'd, 83 F.3d 41 (2d Cir. 1996). "Affidavits submitted

by an agency are 'accorded a presumption of good faith . . . .

'" Carney, 19 F.3d at 812 (quoting Safecard Servs., Inc. v. SEC,

926 F.2d 1197, 1200 (D.C. Cir. 1991)).

**II.**

The following facts are undisputed unless otherwise noted.

**A.**

Throughout the pendency of this litigation, the plaintiff

has been pursuing an ongoing claim for asylum in the plaintiff's

removal proceedings in immigration court. On August 21, 2019, an

immigration judge in New York City granted the plaintiff's

application for asylum. Nyborg-Burch Decl., Ex. A-10. On

September 13, 2019, the DHS appealed the immigration judge's

Decision to the Board of Immigration Appeals.[2] Id., Ex. A-11.

Through the FOIA request at issue in this case, the plaintiff

seeks information and records related to his interactions with

ICE, and particularly with HSI, which information and records

---

[2] Asylum proceedings are subject to confidentiality and other privacy
restrictions. See 8 C.F.R. § 208.6. In particular, records used in such
proceedings may not be disclosed without the consent of the applicant,
subject to exceptions that include disclosure to Government officials that
require the documents for certain specified reasons. See id. § 208.6(a),(c).

the plaintiff alleges will aid the plaintiff in his pending removal proceedings. Id., Ex. A-1.[3]

## B.

On February 13, 2019, the plaintiff submitted a FOIA request to the United States Citizenship and Immigration Services ("USCIS") for "his entire alien file" and "any and all information related to immigration court proceedings, or any contacts with USCIS." ECF 30-1, at 1, 4. On March 29, 2019 the USCIS responded to the plaintiff's request with hundreds of responsive records. ECF 30-3.

On February 13, 2019, the plaintiff also submitted a FOIA request to ICE for "all information related to his interactions with ICE, including cooperation with HSI or other ICE officials." Fuentes Decl. ¶ 6 & Ex. 2. On February 21, 2019, the ICE FOIA Office forwarded the plaintiff's request to HSI, and another component of ICE, Enforcement and Removal Operations ("ERO"). Id. ¶¶ 20, 30-33, 40.

After ERO received the plaintiff's FOIA request on February 21, 2019 from the ICE FOIA Office, the FOIA point of contact ("POC") within ERO's Information Disclosure Unit ("IDU") directed an IDU Management and Program Analyst ("MPA") to

---

[3] Because the plaintiff has been detained while his removal proceedings have been litigated, the plaintiff has repeatedly requested that the agencies to which the plaintiff's FOIA requests have been addressed expedite his FOIA requests. Nybourg-Burch Decl., Ex. A-1.

conduct searches responsive to the plaintiff's request. Id. ¶¶ 20, 30-33. Based on the MPA's subject matter expertise and knowledge of ERO's file management systems, the MPA determined that any responsive records would likely be held in two ERO databases, the Enforcement Alien Removal Module ("EARM") and the Central Index System ("CIS"). Id. ¶ 33. The MPA conducted the database searches using the plaintiff's name, dates of birth, country of birth and alien number, which are the identifiers by which the DHS organizes date in the EARM and CIS databases.[4] Fuentes Supp. Decl. ¶¶ 10-11.

After conducting these searches, the ERO MPA located 10 pages of potentially responsive records, and on March 11, 2019, ICE responded to the plaintiff's request by producing those 10 pages, which were partially redacted pursuant to FOIA Exemptions 6, 7(C), and 7(E).[5] Fuentes Decl. ¶¶ 7, 34 & Ex. 3. At that

---

[4] The plaintiff provided two dates of birth in his FOIA request, both of which were used during the database searches. Fuentes Decl. ¶ 33 n.3. The MPA also searched for various iterations of the plaintiff's name, including "Delfino Garcia Gonzalez," "Delfino Garcia," "Delfino Gonzalez," and "Delfino Enrique Garcia Gonzalez." Fuentes Supp. Decl. ¶ 10. With respect to the country of birth, the MPA used "Mexico." Id. The specific dates of birth and the plaintiff's alien number are personally identifiable information that ICE sets forth in the in camera declaration. Id.

[5] FOIA contains nine statutory exemptions listed at 5 U.S.C. § 552(b)(1)-(9). Exemption 6 covers personnel and medical information. Exemption 7(C) covers law enforcement related information disclosure of which could constitute an unwarranted invasion of personal privacy. Exemption 7(E) covers law enforcement-related information disclosure of which would disclose law enforcement techniques and procedures or guidelines for investigations or prosecutions. As discussed below, the current motions concern withholding of records only under Exemption 7(E) and Exemption 7(F), the latter of which covers law enforcement related information, disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

point, the IDU POC did not task other ERO divisions or units to conduct searches because, based on the subject matter of the plaintiff's request and the POC's subject matter expertise, the POC determined that no other ERO offices would have records that were responsive to the plaintiff's FOIA request. Id. ¶¶ 20, 34.

After HSI received the request from the ICE FOIA Office on February 21, 2019, an MPA in the HSI Records Disclosure Unit ("RDU") reviewed the request and determined that the most likely place to search for responsive records would be HSI's main database, Investigative Case Management System ("ICM"), the core law enforcement case management tool used by HSI special agents and personnel supporting the HSI mission. Id. ¶¶ 37-38, 40. The RDU MPA searched ICM using the plaintiff's name, dates of birth, country of birth, and alien register number but did not locate any responsive records. Id. ¶ 40. The MPA then relayed the results of the search to the ICE FOIA Office. Id. ¶ 40.

On March 29, 2019, the plaintiff filed an administrative appeal of ICE's response challenging the adequacy of ICE's search for responsive records. Id. ¶ 8 & Ex. 4. The plaintiff stated in his appeal that information contained in the redacted responses that were provided to the plaintiff based on the ERO search suggested that additional responsive records existed that concerned the plaintiff's interactions with ICE in the context of grants of deferred action and prosecutorial discretion. Id.

7

On April 2, 2019, the plaintiff initiated this litigation against USCIS and DHS for failure to comply with FOIA, principally alleging that USCIS and DHS failed to conduct adequate searches. ECF No. 1.

On April 15, 2019, the plaintiff supplemented his administrative appeal and stated that USCIS, in response to his FOIA request to USCIS, had located 99 pages from the plaintiff's file that originated from ICE. Fuentes Decl. ¶ 9 & Ex. 5. The plaintiff noted in his supplemental letter that USCIS had sent the 99 pages to the ICE FOIA Office for consideration and in direct response to the plaintiff's FOIA request to ICE. Id.

On May 7, 2019, ICE produced to the plaintiff the 99 pages, with redactions, that had been sent from USCIS to ICE. Id. ¶ 10. On May 8, 2019, ICE remanded the plaintiff's administrative appeal of the FOIA request and informed the plaintiff that "[u]pon a complete review of the administrative record, ICE has determined that new search(s) or, modifications to the existing search(s), could be made." Id. ¶ 11 & Ex. 6. On May 16, 2019, an ICE staff member informed the plaintiff by email that "[t]he ICE FOIA Office advised me that one program office has conducted additional searches and located potentially responsive records, which it forwarded to the ICE FOIA Office for review and processing. Another program office is currently conducting supplemental searches and is scheduled to provide any

8

potentially responsive records it may locate to the ICE FOIA Office by May 28th." Id., Ex. 7. On June 14, 2019, the plaintiff filed an amended complaint in this case, adding ICE as a defendant. ECF No. 7.

On July 3, 2019, ICE produced to the plaintiff 15 pages of responsive documents that had been located by a different MPA at ERO following the administrative remand after additional searches in three databases: EARM, CIS and the EID Arrest Graphical User Interface for Law Enforcement ("EAGLE"). Fuentes Decl. ¶¶ 14, 36 & Ex. 8. Portions of the 15 pages were withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E). Id. At that time, the IDU did not task other ERO divisions or units with locating additional records because, based on the subject matter of the FOIA requests, the IDU believed that no other ERO offices were likely to have responsive records. Id. ¶ 36.

Upon remand following the plaintiff's administrative appeal on May 8, 2019, the ICE FOIA Office re-sent the plaintiff's request to HSI and instructed HSI to conduct further searches. Id. ¶ 41. A POC in RDU received the request and determined that the request should be forwarded to the FOIA POC in the HSI New York Field Office. Id. The RDU POC did not task other HSI divisions or units based on the RDU POC's understanding of the subject matter of the plaintiff's request. Id. The FOIA POC in the HSI New York Field Office then tasked a Special Agent to

conduct searches for responsive records. Id. The Special Agent,
based on his own subject matter knowledge and knowledge of the
file maintenance system in the HSI New York Field Office,
determined that responsive records, if any, would be kept in the
form of paper files. Id. ¶ 42. The Special Agent located 13
pages, and informed the ICE FOIA Office. Id. On July 9, 2019,
the ICE FOIA Agent identified these pages as responsive to the
plaintiff's FOIA request, and informed the plaintiff that the 13
pages were being redacted in full pursuant to FOIA Exemptions 6,
7(C), 7(E), and 7(F). Id. ¶¶ 15, 42 & Ex. 9.

On August 1, 2019, the plaintiff filed a second amended
complaint adding a FOIA cause of action challenging the adequacy
of ICE's searches on the ground that ICE failed to comply with
FOIA when it invoked certain exemptions following the
administrative remand. ECF No. 30.[6]

As part of an additional review in the context of this
litigation, the HSI RDU conducted a voluntary supplemental
search. Fuentes Decl. ¶ 43. The Section Chief of HSI RDU
instructed a Senior Special Agent in HSI's New York Field Office
to conduct an additional search for responsive records. Id. The
Special Agent, based on her own expertise, determined that more

---

[6] On September 26, 2019, the plaintiff voluntarily dismissed USCIS from the
case. ECF No. 37. Therefore, the only defendants left in the case are DHS and
ICE. ERO and HSI, which are components of ICE, are not separately named as
defendants.

responsive records, if any, would be found in the form of paper files. Id. The Special Agent's manual search of paper files yielded 68 pages of potentially responsive records, which HSI forwarded to the ICE FOIA Office for review and processing. Id. On November 26, 2019, the ICE FOIA office explained to the plaintiff that the pages were being withheld in full pursuant to FOIA Exemptions 6, 7(C), 7(E), and 7(F). Id. ¶¶ 16, 43 & Ex. 10.

Thus, in total, 81 pages of paper records from the HSI search were identified as responsive to the plaintiff's FOIA request. Those pages were originally redacted in full. At the oral argument of the pending motions on June 25, 2020, the plaintiff explained that certain information in the 81 pages, for example the dates, would be useful to him in his immigration case. Following the oral argument, ICE re-reviewed the 81 pages of responsive HSI documents to determine whether any non-exempt information in the 81 pages could be reasonably segregated from information that ICE determined was exempt under FOIA Exemptions 6, 7(C), 7(E), and 7(F). ECF No. 58. On July 15, 2020, ICE produced to the plaintiff the 81 pages of responsive HSI documents with all information redacted except for dates that were contained in the 81 pages. Id.

### c.

The Government has moved for summary judgment. In support of the Government's motion for summary judgment, the Government

has submitted a Vaughn index[7] specifying the bases for the Government's withholding in full the 81 pages in question in this case under FOIA Exemptions 7(E) and 7(F). Fuentes Decl. ¶¶ 44-46 & Ex. 1. The Government has also submitted two declarations of Toni Fuentes, the Deputy Officer of the ICE FOIA Office. ECF Nos. 42, 50. The Government has also submitted ex parte and in camera declarations and a Vaughn index in support of the Government's motion for summary judgment. ECF Nos. 43, 51. The plaintiff has filed a cross-motion for summary judgment as well as a motion to strike the Government's in camera and ex parte submissions, or in the alternative to order partial disclosure of those submissions.

Throughout briefing of the cross-motions for summary judgment, the parties have narrowed the issues in this case. The parties agree that the plaintiff is not challenging the redactions applied to the 99-page production that the USCIS had referred to ICE to be produced to the plaintiff. The plaintiff also is not challenging the redactions of the documents produced by ERO. Finally, with respect to the 81 pages of documents that have now been produced by HSI to the plaintiff with all information redacted except for dates, the plaintiff does not challenge the application of FOIA Exemptions 6 and 7(C) to those

---

[7] See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

documents. The plaintiff only challenges the application of FOIA Exemptions 7(E) and 7(F). Thus, the cross-motions for summary judgment deal principally with three issues: (1) the sufficiency of ICE's searches, as carried out in this case by ERO and HSI; (2) the exemptions claimed by ICE in making its redactions; and (3) the alleged failure of ICE to segregate additional allegedly non-exempt information in the 81 pages from any exempt information.[8]

### III.

As an initial matter, the plaintiff challenges the Government's use of the ex parte and in camera affidavits to supplement the Government's public justifications for the adequacy of its search, for its redactions of the 81 pages under FOIA Exemptions 7(E) and 7(F), and for its initial determination that the 81 pages were appropriately redacted in full rather than subject to partial redactions.

In FOIA cases, agencies may rely on "ex parte affidavits to supplement [their] public justification." N.Y. Times Co. v. Dep't of Justice, 390 F. Supp. 3d 499, 512 (S.D.N.Y. 2019). However, "the use of in camera affidavits in FOIA cases is discouraged, and . . . the Government should provide the most thorough public explanation possible." Human Rights Watch v.

---

[8] The 81 documents in question are labeled with Bates numbers 2019-ICLI-00047 16-28 and 29-96. ECF No. 46, at 3-4.

Dep't of Justice Fed. Bureau of Prisons, No. 13-cv-7360, 2015 WL
5459713, at *14 (S.D.N.Y. Sept. 16, 2015) (internal citation and
quotation marks omitted), reconsideration granted on other
grounds, 2016 WL 3541549 (S.D.N.Y. June 23, 2016). Although "in
camera declarations are to be avoided unless essential, where
. . . an agency indicates that no additional information
concerning an investigation may be publicly disclosed without
revealing precisely the information that the agency seeks to
withhold, the receipt of in camera declarations is appropriate."
Life Extension Found., Inc. v. I.R.S., 915 F. Supp. 2d 174, 186
(D.D.C. 2013) (internal citation and quotation marks omitted),
aff'd, 559 F. App'x 3 (D.C. Cir. 2014).

There is a sound basis in this case for the Government's
submission of supplemental declarations and a Vaughn index ex
parte and in camera based on the nature of the documents
withheld and the nature of the FOIA Exemptions asserted. See id.
at 185-86. In this case, it would not be possible to hold the
Government to its FOIA obligations without recourse to the ex
parte affidavits submitted for in camera review. It is therefore
necessary to review additional materials in camera and ex parte
in this case in additional to the public submissions. See
Amnesty Int'l v. Cent. Intelligence Agency, 728 F. Supp. 2d 479,
507-08 (S.D.N.Y. 2010) (discussing the necessity of considering
in camera declarations to supplement the public submissions in

14

order to hold the Government to its FOIA obligations). As
discussed below, the subject matter of the plaintiff's FOIA
requests concerns highly sensitive information collected for law
enforcement purposes, and the use of in camera and ex parte
affidavits is appropriate in order to avoid "revealing precisely
the information that the agency seeks to withhold." Life
Extension Found., 915 F. Supp. 2d at 186. The plaintiff's
request to strike the in camera and ex parte submissions is
therefore denied.

The plaintiff also suggests that the Court should conduct
an in camera review of the underlying 81 pages to ascertain
whether the Government's assertion that the 81 pages must be
withheld in full except for the dates is correct.[9]

"A court should only consider information ex parte and in
camera that the agency is unable to make public if questions
remain after the relevant issues have been identified by the
agency's public affidavits and have been tested by plaintiffs."
Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 75-76 (2d Cir. 2009).
Generally, only "if there is evidence of agency bad faith—for
example, if information contained in agency affidavits is
contradicted by other evidence in the record—then in camera

---

[9] Following oral argument, and after the plaintiff received the 81 pages of
responsive records with the dates in those pages newly included as non-
exempt, the plaintiff renewed his argument that the Court should conduct an
in camera review of the 81 pages. ECF No. 58.

inspection may be necessary to insure that agencies do not misuse the FOIA exemptions to conceal non-exempt information." Carter v. Dep't of Commerce, 830 F.2d 388, 393 (D.C. Cir. 1987).

It is unnecessary for the Court to conduct an in camera review of the 81 pages themselves. For the reasons set out below and in the Court's companion opinion issued ex parte and under seal, the Government's public declarations and Vaughn index as well as the declarations and Vaughn index submitted in camera and ex parte are sufficient to hold the Government to its FOIA obligations. See Amnesty Int'l, 728 F. Supp. 2d at 508 (using a combination of public and in camera declarations to hold the Government to its FOIA obligations). The plaintiff has not offered any evidence that the Government has operated in bad faith in responding to the plaintiff's FOIA requests or in litigating this case. There is no reason in this case to engage in further in camera review of the underlying 81 pages themselves, which is "the exception, not the rule" in FOIA cases. See Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988).

Finally, to the extent that the plaintiff suggests that the Court could order partial disclosure of the 81 pages at issue in this case, or disclosure of the in camera and ex parte submissions, under a protective order, such a request has no basis under FOIA. See Nat'l Archives & Records Admin. v. Favish,

541 U.S. 157, 174 (2004) ("There is no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing its general dissemination.").

The plaintiff's motion to strike the in camera and ex parte submissions, or in the alternative for partial disclosure, is **denied**.

### IV.

The cross-motions for summary judgment concern the Government's compliance with its FOIA obligations. "A federal agency responding to a FOIA request must (1) conduct an adequate search using reasonable efforts, (2) provide the information requested, unless it falls within a FOIA Exemption, and (3) provide any information that can be reasonably segregated from the exempt information." DiGirolamo v. Drug Enf't Admin., No. 15-cv-5737, 2017 WL 4382097, at *3 (S.D.N.Y. Sept. 29, 2017).

At issue on the cross-motions for summary judgment are 1) whether ICE conducted a reasonable search in responding to the plaintiff's FOIA request; 2) whether FOIA Exemptions 7(E) and 7(F) were properly invoked in this case with respect to the 81 pages located by HSI; and 3) whether the Government's determination that the 81 pages had to be redacted in full except for the dates should be affirmed.

**A.**

The Government has demonstrated that the searches in response to the plaintiff's FOIA requests were adequate and that the Government used reasonable efforts to respond to the plaintiff's requests.

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney, 19 F.3d at 812 (citing 5 U.S.C. § 552(a)(4)(B)). To show that its search was "adequate," an agency must demonstrate that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) (quotation marks omitted). "This standard does not demand perfection, and thus failure to return all responsive documents is not necessarily inconsistent with reasonableness . . . ." Adamowicz v. Internal Revenue Serv., 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008). The "adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). The reasonableness of a search may be "established solely on the basis of the Government's relatively detailed,

non-conclusory affidavits that are submitted in good
faith." Adamowicz, 552 F. Supp. 2d at 355. A declaration in
support of the reasonableness of a search should explain "the
search terms and the type of search performed, and aver[] that
all files likely to contain responsive materials . . . were
searched." Iturralde, 315 F.3d at 313-14 (citation and internal
quotation marks omitted). The declaration need not "set forth
with meticulous documentation the details of an epic search."
Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam).

In this case, the public Fuentes Declarations demonstrate
that the ICE FOIA Office fulfilled its FOIA obligations because
over the course of the ERO and HSI search processes, ICE
"searched the record systems, or caused the records systems to
be searched, where it believed responsive records were likely to
be located." Conti v. Dep't of Homeland Sec., No. 12-cv-5827,
2014 WL 1274517, at *11 (S.D.N.Y. Mar. 24, 2014).

The Fuentes Declarations detail the adequacy of ICE's
response to the plaintiff's FOIA requests, a response which was
bifurcated between the ERO search and the HSI search.[10]

With respect to the ERO search, in the first stage, the IDU
MPA searched two databases, EARM and CIS, for responsive records
by using the plaintiff's name (including various possible

---

[10] At oral argument, the plaintiff noted that the plaintiff was most concerned
about the adequacy of the HSI search, but that the plaintiff believes that
both the HSI and ERO searches were inadequate under the FOIA.

iterations), dates of birth, country of birth, and alien number. Fuentes Decl. ¶ 33. EARM is the application that ICE officers use to input investigation, arrest, booking, detention, and removal information into the ICE law enforcement database while CIS is a DHS "platform" that permits searches across various immigration enforcement databases. Id. This initial search yielded 10 partially redacted responsive pages that were produced to the plaintiff on March 11, 2019 after partial redactions were made. Id. ¶¶ 7, 34 & Ex. 3. Those redactions are not challenged. Following administrative remand, a different MPA then searched EARM, CIS, and EAGLE. Id. ¶ 36.

Meanwhile, the HSI search began with an MPA's determination that the main HSI database, ICM, was most likely to yield responsive records. Id. ¶ 40. Although the ICM search yielded no responsive records, HSI then continued to attempt to respond to the plaintiff following remand, at which point HSI determined that paper records in the New York HSI Field Office would be the most likely place to find responsive records. Based on this determination, HSI eventually located 81 pages, 13 of which were originally identified and withheld in full on July 9, 2019, id. ¶ 15 & Ex. 9, and 68 of which were originally identified and withheld in full as part of a litigation review on November 26, 2019, id. ¶ 16 & Ex. 10.

The searches conducted by ERO and HSI were "reasonably calculated" to locate responsive documents. See Brennan Ctr. for Justice at New York Univ. Sch. of Law v. Dep't of Homeland Sec., 331 F. Supp. 3d 74, 85 (S.D.N.Y. 2018) (quoting Seife v. Dep't of State, 298 F. Supp. 3d 592, 607 (S.D.N.Y. 2018)). The Fuentes Declarations adequately describe the EARM, CIS, and EAGLE databases used by ERO to conduct the search as well as the ICM database used by HSI to conduct its search. The Declarations further describe why these databases were, based on the plaintiff's request and the subject matter expertise of the various MPAs, reasonable databases in which to conduct the searches in this case to respond to the plaintiff's request for documents relating to his interactions with ICE. See id. (noting the importance of the agency's declarations about the structure of FBI databases in evaluating the adequacy of the FBI's search). The searches in these databases, using a broad range of search terms—the plaintiff's name, dates of birth, country of birth, and alien number—were reasonably calculated to produce records responsive to the plaintiff's request which was specific to the plaintiff himself. Restricting the searches to the plaintiff's own identifiers was thus reasonable. See id. at 86.

The plaintiff offers several arguments about why the searches were nevertheless inadequate. The plaintiff's arguments are without merit.[11]

The plaintiff challenges the number of databases and platforms searched. The plaintiff notes that it is confusing to refer to databases when one of the listed "databases," CIS, is a platform that permits searches across various immigration databases and that the Fuentes Declarations do not establish that all potential locations and databases were searched. However, it is clear from the Fuentes Declaration that the MPA searched "the immigration enforcement databases" that fall within the CIS umbrella for the plaintiff's name, dates of birth, country of birth, and alien number. Fuentes Decl. ¶ 33. Further, the Fuentes Declaration attests to the fact that ICM, the "core law enforcement case management tool used by HSI special agents and personnel supporting the HSI mission, . . . [was] the database most likely to contain information regarding the office responsible for a specific investigation." Id. ¶ 38. Based on the Government's affirmation that the MPAs at ERO and HSI searched the databases and platforms that they believed, based on their subject matter expertise and the plaintiff's

---

[11] In the initial memorandum of law in support of its motion for summary judgment and in opposition to the Government's motion for summary judgment, the plaintiff objected to the adequacy of the searches based on the search terms used. The plaintiff now concedes based on the supplemental Fuentes Declaration that the search terms used were adequate.

22

request, would most likely yield requested documents, the
Government has carried its burden of establishing that its
search was adequate based on the databases and platforms it
chose to use. See Brennan Ctr., 331 F. Supp. 3d at 86
(describing the adequacy of a search based on the FBI's decision
about which internal databases and systems to use to conduct the
search).

The plaintiff also argues that neither ERO nor HSI provided
an adequate explanation why there were no searches of hard
drives, shared drives, DVDs, CDs, USB storage devices, or email,
particularly in light of the existence of paper files in the New
York Field Office. The Fuentes Declaration, which "'describe[s]
at least generally the structure of the agency's file system' to
the extent that it 'renders any further search unlikely to
disclose additional relevant information,'" is sufficient to
conclude that any potentially responsive documents to the
plaintiff's request would have been kept either on the ERO and
HSI databases that were searched, or in the paper files that
were located at the HSI New York field office. See id (quoting
El Badrawi v. Dep't of Homeland Sec., 583 F. Supp. 2d 285, 298
(D. Conn. 2008)). The plaintiff has not demonstrated that the
Government's search was inadequate on the ground that the search
was restricted to the relevant databases and paper files in the
New York HSI Field Office. See Conti, 2014 WL 1274517, at *15

23

("[A]n agency need only search those systems in which it believes responsive records are likely to be located.").

The plaintiff's remaining arguments for why the searches were inadequate concern the HSI search and the lack of details concerning the HSI paper files search.

Contrary to the plaintiff's argument that the Government's search was inadequate because the Government's paper records searches yielded additional responsive records that did not appear in the initial electronic searches, the fact that the Government located additional responsive records "highlights the [Government's] good faith in carrying out the plaintiff's request" and points to the adequacy of the Government's overall search both prior to and during this litigation. Flores v. Dep't of Justice, 391 F. Supp. 3d 353, 363 (S.D.N.Y. 2019) (collecting cases); see also Adamowicz v. IRS, 402 F. App'x 648, 651 (2d Cir. 2010). The lack of results from the HSI database search is not, as the plaintiff states, "suspicious," but instead indicates, when put into the context of the entire HSI search process, that the HSI search was adequate and conducted with good faith and diligence.

Similarly, the fact that HSI concluded that the most responsive records would be kept in paper form in the New York field office after concluding that an electronic-only search was insufficient highlights the adequacy of the Government's

24

explanation about "its search process and why the specified record systems are not reasonably likely to contain responsive records." Nolen v. Dep't of Justice, 146 F. Supp. 3d 89, 97 (D.D.C. 2015) (citation omitted). The decision by HSI not to task other HSI divisions or units apart from the New York field office with further searches following the unsuccessful ICM search appears to be a reasonable decision by HSI based on the subject matter expertise of the HSI POC and the plaintiff's request, which was restricted to interactions with HSI. Fuentes Decl. ¶ 41; Brennan Ctr., 331 F. Supp. 3d at 87 (describing the adequacy of an additional search of FBI field office files); Nolen, 146 F. Supp. 3d at 95 ("[A]n agency is not obliged to look beyond the four corners of the request for leads to the location of responsive documents.") (quotation marks omitted).

Finally, the plaintiff's argument that there is an inadequate explanation about the scope of HSI's paper file search has no merit in light of the description of the exhaustive search given in the Fuentes Declaration. The Fuentes Declaration describes a search for paper files in the HSI New York Field Office that was carried out by multiple Special Agents, one during the initial paper search and one during the paper search in the context of the litigation review, each with detailed knowledge of the manner in which the office maintains its files. Fuentes Decl. ¶¶ 41-43. This paper-records search,

which proceeded in multiple stages as the Government gained new insights into the types of records that were most responsive to the plaintiff's FOIA request, was plainly adequate.

Based on the Fuentes Declarations, both the public declarations and the declaration submitted <u>ex parte</u> for <u>in camera</u> review, the Government has carried its burden on summary judgment of demonstrating that the searches carried out by ERO and HSI were adequate and reasonably calculated to respond to the plaintiff's request. <u>See</u> <u>Adamowicz</u>, 552 F. Supp. 2d at 362 (affirming the adequacy of the agency's search based on the specificity of the agency declaration).[12]

**B.**

The Government has also demonstrated that FOIA Exemptions 7(E) and 7(F) were properly applied to the 81 pages of responsive HSI paper records.

Courts will decide questions about FOIA Exemptions on a motion for summary judgment and the factual basis for an agency's withholding may be supported by declarations by agency personnel. <u>See</u> <u>Carney</u>, 19 F.3d at 812. "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." <u>Id.</u> (footnote omitted). "[A]n

---

[12] In addition to the reasoning set out in this section, the Court also sets out further bases in the <u>ex parte</u> opinion filed under seal for why the Government's search in this case was adequate.

agency's justification for invoking a FOIA exemption is
sufficient if it appears logical or plausible." Wilner, 592 F.3d
at 73 (citation and internal quotation marks omitted). Thus,
"[s]ummary judgment is proper in a FOIA case where affidavits
give 'reasonably detailed explanations why any withheld
documents fall within an exemption,' and show that the withheld
information logically falls within the claimed exemption.'"
Conti, 2014 WL 1274517, at *13 (quoting Carney, 19 F.3d at 812 &
Halpern v. F.B.I., 181 F.3d 279, 291 (2d Cir. 1999)).

### 1.

In order to invoke either Exemption 7(E) or Exemption 7(F),
the Government must make a "threshold showing 'that the
materials be records or information compiled for law enforcement
purposes.'" Brennan Ctr., 331 F. Supp. 3d at 97 (quoting John
Doe Agency v. John Doe Corp., 493 U.S. 146, 148 (1989)). "To
show that particular documents qualify as 'records or
information compiled for law enforcement purposes,' an agency
must establish a rational nexus between the agency's activity in
compiling the documents and 'its law enforcement duties.'" Id.
(quoting Keys v. Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir.
1987)).

In this case, the Government has met its threshold burden
necessary to invoke both Exemption 7(E) and Exemption 7(F) that
the 81 pages were "compiled for law enforcement purposes." ICE

acts pursuant to the Immigration and Nationality Act to administer and enforce the immigration laws and naturalization of aliens. Fuentes Decl. ¶ 48 (citing 8 U.S.C. § 1103). Further, ERO oversees programs and operations to identify removable individuals, detain them when necessary, and remove them from the United States, while HSI investigates domestic and international activities that arise from the illegal movement and peoples and goods into, within, and out of the United States. Id. ¶ 49. These agencies are clearly law enforcement agencies within the meaning of Exemption 7(E) and 7(F) under the broad definition of "law enforcement" used at the threshold inquiry. See Brennan Ctr., 331 F. Supp. 3d at 97-98 (collecting cases).

Moreover, the Government has established that the 81 pages in question have a rational nexus with the agencies' law enforcement activities because they contain sensitive information and personally identifiable information [PII] of ICE employees and third parties engaged in law enforcement activities. The plaintiff's own requests make clear that he, in order to establish his claim for asylum in removal proceedings, seeks documents and information concerning the plaintiff's interactions with ICE and HSI. Plainly, any documents responsive to that request would concern the law enforcement activities of ICE, ERO, and HSI.

**2.**

The Government has established that it properly applied FOIA Exemption 7(E) to the 81 pages of paper records from the HSI search.

FOIA Exemption 7(E) exempts from disclosure:

> Records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

5 U.S.C. § 552(b)(7)(E).

The Court of Appeals for the Second Circuit has interpreted this exemption to cover two categories of information, one in which disclosure would disclose "techniques and procedures," or "how law enforcement officials go about investigating a crime," and the other in which disclosure would disclose "guidelines" for law enforcement investigations, or how the agency allocates resources in planning future policy or conduct. See Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec., 626 F.3d 678, 682 (2d Cir. 2010). "Discussion of law enforcement techniques and procedures is categorically exempt from FOIA disclosure, 'without need for demonstration of harm.'" Iraqi Refugee Assistance Project v. Dep't of Homeland Sec., No. 12-cv-

3461, 2017 WL 1155898, at *5 (S.D.N.Y. Mar. 27, 2017) (quoting
<u>Allard K. Lowenstein</u>, 626 F.3d at 681).

The public <u>Vaughn</u> index states that information from the 81
pages was withheld pursuant to Exemption 7(E) because the "pages
consist of law enforcement sensitive information and PII of ICE
employees and other third parties." Fuentes Decl., Ex. 1, at 8,
11. The <u>Vaughn</u> index states that the exemption was "applied to
law enforcement sensitive information, the release of which
could reveal techniques and/or procedures for law enforcement
investigations or prosecutions, or disclose guidelines for law
enforcement investigations or prosecutions which could
reasonably be expected to risk circumvention of the law. The
redacted portions of the handbook reveal law enforcement
sensitive techniques, procedures, and guidelines that are not
well known.[13] Disclosure of this information could reasonably be
expected to jeopardize ongoing ICE investigations and operations
and assist those seeking to violate or circumvent the law." <u>Id.</u>
The Fuentes Declaration further states that ICE applied this
Exemption "to protect from disclosure other law enforcement
sensitive information such as subject identification codes, law

---

[13] The plaintiff raised a question during this litigation as to the use of the
word "handbook" in the <u>Vaughn</u> index, noting that a handbook would not seem
responsive to the plaintiff's request. The Government responded that the use
of the word "handbook" was a typographical error and that the sentence should
read: "The redacted portions of these <u>pages</u> reveal law enforcement sensitive
techniques, procedures, and guidelines that are not well-known." Fuentes
Supp. Decl. ¶ 7 (emphasis added).

enforcement event numbers, law enforcement case numbers and categories, FBI numbers, and URLs for internal law enforcement database web addressed." Fuentes Decl. ¶ 64.

Courts frequently find that the kind of information discussed in the Vaughn index and the Fuentes Declarations, personally identifiable information pertaining to Government agents and third parties as well as case event codes and URLs of internal law enforcement databases, is properly withheld under Exemption 7(E). See Rojas-Vega v. Immigration & Customs Enf't, 302 F. Supp. 3d 300, 310-11 (D.D.C. 2018) (affirming use of Exemption 7(E) by ICE to withhold "internal URLs, case numbers, case categories, subject identification numbers, and internal identifying codes and departure statuses."); Bishop v. Dep't of Homeland Sec., 45 F. Supp. 3d 380, 388-89 (S.D.N.Y. 2014) (affirming use of Exemption 7(E) to withhold codes returned from agency database searches and collecting cases); DiGirolamo, 2017 WL 4382097, at *5 (affirming the invocation of Exemption 7(E) to withhold DEA identifiers, which were used in the context of the internal system of developing criminal activity information and intelligence). The manner by which the law enforcement agencies in this case label cases, access databases, and maintain information regarding cases in general falls within FOIA Exemption 7(E) for "law enforcement technique and procedures." See Rojas-Vega, 302 F. Supp. 3d at 310-11. The documents

responsive to the plaintiff's request pertain directly to HSI's enforcement of the immigration laws and fall within Exemption 7(E). See Iraqi Refugee Assistance Project, 2017 WL 1155898, at *5.

Therefore, the Government properly applied Exemption 7(E) to the 81 pages at issue.[14]

**3.**

The Government also properly applied FOIA Exemption 7(F) to the 81 pages.

FOIA Exemption 7(F) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (F) could reasonably be expected to endanger the life or physical safety of any individual[.]" 5 U.S.C. § 552(b)(7)(F).

FOIA Exemption 7(F) requires an agency to identify at least one individual whose life or physical safety would be in danger with "reasonable specificity." See N.Y. Times Co. v. U.S. Secret Serv., No. 17-cv-1885, 2018 WL 722420, at *9 (S.D.N.Y. Feb. 5, 2018) (quoting Am. Civil Liberties Union v. Dep't of Def., 543

---

[14] The Court also sets out bases for withholding under this Exemption in the ex parte opinion issued under seal that rely on the ex parte and in camera Declaration and Vaughn index submitted by the Government. Reliance on those submissions is appropriate in this case where the public disclosure of the in camera submissions would reveal the kind of information that is shielded by Exemption 7(E) itself. See Elec. Privacy Info. Ctr. v. Drug Enf't Admin., 401 F. Supp. 3d 37, 44-45 (D.D.C. 2019).

F.3d 59, 71 (2d Cir. 2008), judgment vacated on other grounds,
558 U.S. 1042 (2009)). The agency need not name the individual
or individuals whose safety is endangered, but must provide a
description with "reasonable specificity." Id. at *9-10. An
agency's burden to prove that disclosure would result in the
endangerment of life or physical safety is "a low one." Id. at
*10. Courts have upheld an agency's invocation of Exemption 7(F)
to withhold identifying information of federal employees and
other third parties. See DiGirolamo, 2017 WL 4382097, at *5
(affirming an agency's withholding under Exemption 7(F) of
"identifying information of DEA law enforcement personnel, DEA
Special Agents (and supervisors), other law enforcement
personnel, and confidential sources."); Garcia v. Dep't of
Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 378
(S.D.N.Y. 2002) (affirming an agency's withholding under
Exemption 7(F) of the identities of individuals who were FBI
agents conducting an investigation as well as third parties who
provided information to the FBI).

The public Vaughn index states that the 81 pages "consist
of law enforcement sensitive information and PII of ICE
employees and other third parties." Fuentes Decl., Ex. A, at 9,
11. The Vaughn index states that Exemption 7(F) was applied "to
law enforcement sensitive information throughout these pages,
the disclosure of which could reasonably be expected to endanger

the life or physical safety of numerous individuals." Id. at 9, 12.

The Government's assessment that disclosure of the 81 pages would result in danger to ICE employees and third parties is entitled to deference in this matter. See Garcia, 181 F. Supp. 2d at 378. This exemption is appropriate in this case where disclosure of identifying information would put the life and physical safety of law enforcement agents and other third parties in danger. See id.; DiGirolamo, 2017 WL 4382097, at *5 (affirming withholding under Exemption 7(F) identifying information of DEA law enforcement personnel, DEA special agents, and confidential sources). The Government has met its "low" burden under Exemption 7(F) of establishing that disclosure of the information in the 81 pages "could reasonably be expected to endanger the life or physical safety" of the ICE agents and other third parties referred to in the 81 pages, which the Government asserts were compiled for the purpose of carrying out the law enforcement activities of HSI. See N.Y. Times Co., 2018 WL 722420, at *10 (quoting 5 U.S.C. § 552(b)(7)(F)).

Therefore, the Government properly applied FOIA Exemption 7(F) to the 81 pages.[15]

---

[15] The Court also sets out bases for withholding under this Exemption in the ex parte opinion issued under seal that rely on the ex parte and in camera Declaration and Vaughn index submitted by the Government. Reliance on those

**D.**

The defendants have demonstrated sufficiently that they made reasonable efforts to segregate exempt information from non-exempt information and that the result of these efforts was that the 81 pages have been redacted in full except for certain dates contained in the 81 pages.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). A "district court must make specific findings of segregability regarding the documents to be withheld." Color of Change v. Dep't of Homeland Sec., 325 F. Supp. 3d 447, 455 (S.D.N.Y. 2018) (internal quotation marks omitted) (quoting Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1116 (D.C. Cir. 2007)). However, the plaintiff is not entitled to disclosure if disclosure would produce only a "few nuggets of non-intertwined, 'reasonably segregable'" information. See Lead Indus. Ass'n, Inc. v. Occupational & Health Safety Admin., 610 F.2d 70, 88 (2d Cir. 1970) (Friendly, C.J.); see also Am. Civil Liberties Union v. Dep't of Justice, 252 F. Supp. 3d 217, 227-28 (S.D.N.Y. 2017) (collecting cases).

---

submissions is appropriate in this case where the public disclosure of the in camera submissions would reveal the kind of information that is shielded by Exemption 7(F) itself. See Elec. Privacy Info. Ctr., 401 F. Supp. 3d at 44-45.

In this case, the Fuentes Declaration states that ICE originally conducted a line-by-line review to identify any portions of documents that could be segregated from exempt portions and disclosed and non-exempt portions. Fuentes Decl. ¶ 68. In addition, ICE conducted a subsequent review of the 81 pages for segregability and concluded that certain dates in the 81 pages that were originally deemed non-segregable could be segregated and produced to the plaintiff. The plaintiff has not provided a basis to defeat the presumption of good faith owed to the Government's declarations on the issue of segregability. See Am. Civil Liberties Union, 252 F. Supp. 3d at 229; Conti, 2014 WL 1274517, at *26 (finding persuasive DHS's declaration that it withheld material and disclosed all non-exempt information that reasonably could be segregated).

The fact that the Government determined in its post-argument re-review of the 81 pages that certain dates were segregable further bolsters the Government's declarations with respect to segregability throughout this litigation because it demonstrates that the Government has, in good faith, been willing to conduct further reviews at the request of the plaintiff and the Court. Cf. Flores, 391 F. Supp. 3d at 363 (finding that continued production of documents throughout a search bolstered the Government's showing as to the adequacy of the search).

36

The plaintiff argues that he has an interest in the documents even in a highly redacted form, such as a document that contained simply titles, dates, and the plaintiff's name. In response to that argument made in the plaintiff's papers and at oral argument, the Government has now produced the documents to the plaintiff with the dates. The Government determined that only the dates were reasonably segregable and that the production of any more information would result in the production of personally identifiable information of ICE agents and other third parties, including any references to the plaintiff himself, that is properly exempted in this case pursuant to Exemptions 7(E) and 7(F). It would defeat the claimed exemptions that the Government properly invoked in this case were the Court to order the Government to release further information beyond the dates that have been produced to the plaintiff. The withheld information, consisting of personally identifiable information relating to persons involved in law enforcement activities as well as techniques by which HSI engages in law enforcement, is properly withheld under Exemptions 7(E) and 7(F).

Based on the public Fuentes Declarations, the ex parte and in camera Fuentes Declaration, and the Government's post-argument representation as to segregability, all of which carry a presumption of good faith that the plaintiff has not rebutted,

37

the Government has carried its burden to show that the 81 pages were properly redacted in full except for the dates that have now been produced to the plaintiff. To the extent that there may be bits of non-exempt information in the 81 pages, the Government has demonstrated sufficiently in its declarations that such information is either inextricably intertwined with the exempt information or are the kinds of "nuggets" to which the plaintiff is not entitled.[16]

The Government's motion for summary judgment is therefore **granted** in full. The plaintiff's motion for summary judgment is **denied.**

## CONCLUSION

The Court has considered all the arguments of the parties in this opinion and in the companion opinion issued <u>ex parte</u> and filed under seal. To the extent not specifically discussed, the arguments are either moot or without merit. The plaintiff's motion for summary judgment and to strike the <u>in camera</u> and <u>ex parte</u> submissions in this case are **denied**. The Government's motion for summary judgment is **granted**. The Clerk is directed to enter judgment for the Government dismissing the complaint and

---

[16] The Court will consider the <u>ex parte</u> and <u>in camera</u> submissions to supplement the Fuentes Declaration on the question of segregability.

against the plaintiff. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:      New York, New York
            July 29, 2020                    _____/s/ John G. Koeltl_____
                                                  John G. Koeltl
                                             United States District Judge